## HEATH *v.* KNAPP.

General words of devise pass a trust estate.

Where a separate use was devised to a *feme covert*, and no trustee was named, a conveyance by the husband and wife, there being no express power, passes the legal estate subject to the wife's equity.

A. devised all the property which he then possessed, or which he might thereafter acquire, or that should belong to him at the time of his death, to his wife for life, with a general power of disposal. The wife devised to B., a *feme covert*, for her separate use. *Held*, a legal title vested in A. in trust, passed to his devisee, and from her to B., by her will, and that a conveyance by B. and her husband passed the legal estate, so that the outstanding equitable title could not be set up in ejectment against an intruder.

IN error from the Common Pleas of Jefferson county.

*Oct.* 16.    The plaintiff in this ejectment derived title under warrants Nos. 3701, 3741, to Robert Morris, dated March 5th, 1793, which were surveyed in 1820.    Morris, by his will in 1804, devised " all the other property which I now possess or may hereafter acquire, whether real or personal, or all that shall belong to me at the time of my death," to his wife, Mary Morris, for life, to be disposed of as she pleases, at or before her death, " when, no doubt, she will make such a distribution amongst her children as she may think proper."    Mrs. Morris, in 1824, devised all the residue of her real and personal estate whatsoever, including all she then had, or might hereafter acquire, to her daughter Maria Nixon.    Her will further declared, " and it is intended for my daughter's sole and separate use, notwithstanding her marriage."    In 1824, Mrs. Nixon and her husband conveyed to the plaintiff.    The admission of these wills, and the conveyance, to which defendant objected, were the first three errors assigned.

The defendants offered in evidence an application by John Nicholson to the land-office on March 5th, 1793, for ninety thousand acres. Forty-five lots to be of this date, Nos. 3699 to 3743 to Robert Morris, of one thousand acres each.    Forty-five lots, 3744 to 3788, to John Nicholson.    To be paid by a check: with an endorsement of " a check received for $12,120 ;" which was rejected by the court.

He then gave in evidence, a patent to Foster in 1832, for tract No. 3701, and his deed to Smith, with a receipt of the deputy-surveyor from Foster for the surveying fees.

There was no evidence connecting Foster's title with the Morris warrant.    By a reference to this case, reported in 10 Watts, 405, it will be seen, there had been a sheriff's sale of the unexecuted war-

rant, and it was under that, which was decided to be a nullity, that Foster claimed title.

The court below (McCALMONT, P. J.) directed a verdict for de- fendant.

The admission of the will, and the rejection of the application by Nicholson, the refusal to answer the points proposed, and directing a verdict for plaintiff, were the errors assigned.

*Arthurs* and *Banks*, for the plaintiffs in error.

*Buffington* and *Jenks*, for the defendant in error.—The first posi- tion by the counsel for the plaintiff in error is, that Robert Morris was a mere trustee for John Nicholson, as they offered to prove by the application for the warrants, and the payment of the purchase money ; and if they had been permitted to prove that fact, that the will of Robert Morris would not have passed the naked legal title to his wife, Mary Morris. This presents the question, whether a devise of all a man's "property, real or personal," passes a trust estate. It is not admitted, that Morris had nothing more than a trust estate : but as the defendant's evidence to that point was rejected, it is to be assumed here in argument that it was so. There is nothing in the character of a trust estate, that ought to exempt it from the general operation of a devise. It is an estate ; a thing of which a man is said to be seised ; and has fixed and well-established legal properties. It is not extinguished by the death of the trustee, but descends as other estates, to the heir-at-law, and may be passed by deed *inter vivos*. A vendor, by articles of agreement, is a trustee for the vendee ; and this court has repeatedly decided, that a sale of his interest by the sheriff passes to the purchaser, not only the un- paid balance of the purchase money, but also the legal title. This, it is true, is a trust coupled with an interest. The point, however doubtful it might once have been, has been decided in several cases in England, and by the Court of Errors of New York. In Jackson *v.* Delaney, 13 Johns. 555, in which the cases are collected, the Chancellor, in delivering the opinion of the court, says : " The rule, as now settled, is this, that trust estates will pass by the usual general words in a will passing other estates," &c.

The next point presented by the counsel of the plaintiff in error is, that assuming that trust estates will pass by general devises in a will, and that the trust in this case vested in Mary Morris, and by her will was transferred to Maria Nixon ; yet " this estate be- ing ' for the sole and separate use' " of the devisee, she had not the power to convey. The case of Lancaster *v.* Dolan, 1 Rawle,

U

231, is clearly distinguishable from the present case. In that case, the *feme covert* had a mere equity, the legal estate being in trustees, who had power to convey, with her assent. In our case, the devise is of the legal estate to the *feme*, and if she cannot convey, there is no means by which she can divest herself, or be divested of it. That devise was of a beneficial estate; and it is contended, this is of a trust. Suppose she was called on by the cestui que trust to execute the trust? how could she do it? If the court, under the act of the 16th June, 1836, Vaughan *v.* Barclay, 6 Whart. 392, were to decree that she convey to the *cestui que trust*, how could she do it? certainly, by deed. And can she not do that voluntarily which she could be compelled to do under a decree of the court? The authorities, therefore, seem to sustain the court fully, that the legal estate vested in Maria Nixon, and that the deed from her husband and herself conveyed the title to the plaintiff. It is further worthy of remark, that the defendants in this case in no way claim under the persons whom they allege to be the beneficial owners, but are mere occupiers or trespassers, without title or any legal connection with the title.

*Oct.* 26.    PER CURIAM.—John Nicholson's application could have shown no more than that Robert Morris was a trustee of the legal title for him; and an intruder could not set up, as an outstanding title, that of the beneficial owner, to an action by one standing in the place of his trustee. It was, therefore, properly rejected. The only question at all doubtful is, whether the legal title passed to the plaintiff by the conveyance of Henry and Maria Nixon; for it is certain it passed by the will of Mr. Morris, under the devise to Mrs. Morris, of all his property, real and personal, which he then possessed, might acquire, or should belong to him at his death; and that it passed by her will to Maria Nixon, for her separate use. That a chancellor would hold the husband to account for the profits as a trustee, is undoubted. But in whom was the legal title? It certainly passed to Mrs. Morris's daughter and devisee, Maria, or by implication to her husband, in order to prevent the trust from failing, if, for that purpose, a separate depository of the legal title were indispensable. But whether it passed to the one or the other, it passed to the plaintiff by their joint deed, which was competent to pass the wife's legal estate by the statute, and the husband's legal estate by the common law. Now, though Mrs. Nixon was incompetent to part with her beneficial estate, according to the principles of Lancaster *v.* Dolan, she was competent to join in an act necessary

to change the trustee; and assuming that the beneficial interest is still in her, the legal estate is in the plaintiff, which, according to Cox v. Blandon, is all that is necessary to enable him to recover against an intruder.                          Judgment affirmed.